PHILIP C. PATTERSON – #2540
Attorney for Plaintiff
2485 Grant Avenue, Suite 200
Ogden, Utah 84401
Tel:    (801) 394-7704
Email:  phil@pcpatterson.com

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| ANN W. GREN,<br><br>    Plaintiff,<br><br>v.<br><br>RYAN A. ESTES, an individual,<br><br>ROY CITY, a Utah municipal corporation,<br><br>CURTIS M. JEFFRIES, an individual,<br><br>WEBER COUNTY, a political subdivision of the State of Utah.<br><br>    Defendants. | **COMPLAINT<br>AND<br>JURY DEMAND**<br><br><br><br><br><br>Case No.<br><br>Judge<br><br>Magistrate Judge |

The Plaintiff Ann W. Gren, by and through her retained attorney, Philip C. Patterson, hereby complains against Defendants, demands a jury trial, and alleges as follows:

### **PARTIES**

1. The Plaintiff Ann W. Gren ("Ann") is a citizen of the United States and a resident of Davis County, Utah.

2. The Defendant Roy City is a political subdivision of the State of Utah.

3. During those times material to this action, the Defendant Ryan Estes ("Estes") was a peace officer employed by the Roy City Police Department. Defendant Estes is being sued in his individual capacity. Defendant Estes is a resident of Weber County, Utah.

4. The Defendant Weber County is a political subdivision of the State of Utah.

5. During those times material to this action, Defendant Curtis M. Jeffries ("Jeffries") was a law enforcement officer employed by the Weber County Sheriff's Department. Defendant Jeffries is being sued in his individual capacity. Defendant Jeffries is a resident of Weber County, Utah.

6. The events material to this action occurred at the Willard Bay State Park, Box Elder County, Utah.

## JURISDICTION AND VENUE

7. This Complaint arises under the United States Constitution and 42 U.S.C. §1983. This Court is vested with jurisdiction pursuant to 28 U.S.C. §§1331, 1343, and 1367.

8. Venue is proper in this Court under 28 U.S.C. §1391.

## GENERAL ALLEGATIONS

9. Ann accompanied her adult son, Thor Gren, to Willard Bay State Park South Marina on Friday, April 5, 2019. They arrived at the marina at approximately 8:30 p.m. with some daylight time remaining. Ann's son intended to shore fish into the later evening hours after sundown. Ann's son parked his vehicle in the large parking lot serving the launch/retrieval boat ramps at the Willard Bay State Park South Marina.

10. The South Marina parking lot is not lighted. Friday, April 5, 2019 was a "new moon" evening. Until Ann's April 5, 2019 arrival, she had not visited the Willard Bay State Park.

11. At approximately 10:30 p.m., Ann left her son fishing on the Willard Bay dike in order to return alone and by foot to their parked vehicle to there retrieve her jacket to deal with the falling evening temperatures.

12. During the timeframe material to this action, Ann was 57 years old, was 5'1" tall, and weighed 90 pounds. Ann's entire lumbar spine had been fused from four surgeries extending from 2004 through 2010. One of these surgeries included the placement of metal stabilizing rods from the base of her spine to each of her hips, the partial 1998 fusion of her cervical spine, and a 2008 surgical repair of her right knee interior cruciate ligament.

13. The four surgeries caused Ann to walk with an uneven gait, to become physically fatigued if compelled to stand too long or to walk other than short distances, and to encounter periodic balance issues.

14. From 2004 forward, Ann's medical doctor prescribed medication schedule consisted of:

>Morpheine – 60 mg, six times each day
>
>Dilaudid – 8 mg, three times each day
>
>Methylin – 20 mg, as needed (narcolepsy)
>
>Gabapentin – 300 mg, four times each day

15. Ann has received Social Security Disability benefits without interruption from 2008 forward.

16. Ann could not find her son's parked vehicle after she left the dike because of the darkness, no marina lighting, and her unfamiliarity with the South Marina.

17. Ann's inability to establish her bearings was observed by Defendants Estes and Jeffries who were occupying an established South Marina campsite in an area beyond the parking lot where the Gren truck was parked.

18. The Defendants Estes and Jeffries had observed that evening Ann's recent multiple journeys through their established camping area, her multiple entries into and out of the campsite bathrooms, her physically irregular walking pattern, and her use of her arms and hands to reach out in order to maintain her balance.

19. As Ann walked past the campsite of the Defendants Estes and Jeffries for what may have been the second time, these Defendants called out to Ann to inquire if she needed help. Defendant Estes told Ann to walk to his campsite and parked trailer where both he and Defendant Jeffries were standing. As Ann walked to the campsite, she saw the Defendants Estes and Jeffries gather empty beer bottles laying on the ground and place them in the trailer.

20. At the campsite, Ann told both the Defendant Estes and Defendant Jeffries her name, that she was lost, could not find her son's parked brown Ford F350 truck, that she was cold, and that she was in pain. Ann's voice evidenced distress and anxiety.

21. Ann readily identified that Defendant Estes and Defendant Jeffries had been drinking by the smell of their exhaled breath, the presence of empty beer cans on the ground of the campsite, and a beer can being held by Defendant Estes.

22. Defendant Estes informed Ann that he was a Roy City Police Department officer. The Defendant Jeffries stated that he was a Weber County Deputy Sherriff.

23. Ann's observation of both the Defendant Estes and the Defendant Jeffries was that they were then off-duty given that neither individual was in uniform and both individuals had been consuming alcohol.

24. Defendants Estes and Jeffries each asked Ann multiple times to name the medications she was using to control her pain, why she didn't have a cellular telephone why she was on foot instead of inside a vehicle, and to repeatedly demand that she identify by year, name and model the truck Ann stated her son was driving. The questioning from the two Defendants progressed to each of them challenging that Ann was actually using the pain medications she had named. The stated basis for their declared disbelief was that Ann's actual use of these medications would have, in their opinion, unmistakably reduced her anxiety well below the levels she was displaying. The Defendants Estes and Jeffries informed Ann that their conclusions were based upon the professional prescription drug and controlled substance training that each of them had attended during their law enforcement careers.

25. The medication questions directed by the two Defendants evolved into a law enforcement interrogation within which Ann's truthfulness and credibility were not believed by the Defendants Estes and Jeffries.

26. To this point in time, Ann remained dressed in a t-shirt with jeans and no jacket. Ann had answered consistently, directly, and without speech impairment the confrontational questions and challenges posed by the Defendants Estes and Jeffries. Ann's hands had remained empty and they were unclenched.

27. Ann's observed uneven walking gait, her wandering in the campground, her calling-out to her son, her emotional distress and visible physical discomfort supported her statements that her multiple surgeries and extended walking had left her fatigued and in pain.

28. Defendants Estes and Jeffries escalated their accusations by stating that Ann was falsely using the name "Ann Gren", that their training left no reasonable doubt that Ann was

under the influence of methamphetamines or other controlled substances, and that she was in the campground to commit theft.

29. Ann responded to the officers' accusations by saying nothing and turning to leave. Defendant Jeffries immediately stepped in front of Ann, blocked Ann from leaving the campsite, and placed Ann in a takedown hold. Ann landed on her back on the asphalt road surface. The Defendants Estes and Jeffries then rolled Ann onto her stomach with her left cheek and chin pushed against the asphalt, placed Ann's right arm and wrist high above her back to compel compliance and bound her wrists with plastic zip-ties. No declaration was made by either Defendant that Ann had been placed under arrest.

30. The takedown hold applied by the Defendant Jeffries created an asphalt abrasion across Ann's left cheek, chin, and nose with bleeding.

31. The takedown used by Defendant Jeffries was unnecessary, invoked excessive physical force, and was the result of willful and malicious conduct or was conduct by the Defendant Jeffries which manifested a reckless and knowing indifference toward others.

32. The physical harshness of the takedown which caused injuries to Ann's face and longer lasting injuries to her neck, was initiated by Defendant Jeffries without supporting justification that his conduct was required to protect his safety or the safety of others. At best, Defendant Jeffries responded to Ann unexpectedly moving one of her hands.

33. Despite Ann standing empty-handed within arm's length of two trained, physically sound, and healthy law enforcement officers who, by age, weight, and experience were able to individually or together detain Ann either voluntarily or with little or no exertion, and despite Ann complying with all instructions from the two Defendants, the Defendants Estes and Jeffries

never attempted to use any lesser means of force to detain Ann before propelling her to the ground with the takedown hold.

34. With Ann remaining facedown on the asphalt roadway, the Defendant Jeffries telephoned 911 and reported that he and the Defendant Estes had been compelled to restrain a female who had become combative. The two defendants requested a law enforcement response to their Willard Bay State Park campground site.

35. A Perry City Police Department officer, two Box Elder County Deputy Sheriffs, a Utah Highway Patrol trooper, and a Utah Division of Natural Resources officer each responded at 22:58 hours to the 911 call made by Defendant Jeffries. The identified five officers all arrived at the campground at approximately 23:15 hours. When each of the five responding officers individually arrived at the campground, Ann was seated in a camp chair at the campsite occupied by the Defendants Estes and Jeffries. Ann's hands remained restrained behind her back with the plastic zip-ties.

36. Ann's son likewise located his mother at the campsite immediately following the approximate 23:15 arrival of the five identified officers who responded to the 911 call. For the first time, a jacket was placed over Ann's shoulders by her son.

37. The Defendants Estes and Jeffries reported to the Utah Division of Natural Resources Reporting Officer that they had watched Ann walk around the campground several times, she appeared to them to be under the influence of alcohol or drugs and they had invited Ann to their campsite where Ann informed them she was looking for her son and his truck.

38. Both Defendants reported that Ann had "appeared to come at" Jeffries, that "she fell to the ground," and she "became combative". (Exhibit 1: Jeffries and R. Estes interview – DNR 05/06/2019 Crime Report – Page 2 of 5- 2 additional pages of attached photographs)

39. The Defendants Estes and Jeffries "decided to detain her and all they could find were some small zip-ties," and "they contacted 911 and waited until police arrived." (Supra)

40. The written statements submitted by the Defendants Estes and Jeffries to the DNR Reporting Officer which are part of the May 6, 2019 DNR Crime Report are deliberate falsehoods and fabrications created by the two named Defendants to obscure and conceal the unnecessary and excessive physical force used by them to wrongfully detain Ann.

## FIRST CAUSE OF ACTION

*42 U.S.C. § 1983 Deprivation of Constitutional Rights – Defendant Jeffries*

41. The Plaintiff Ann W. Gren incorporates by reference each allegation of fact within paragraphs 1-40 of this Complaint.

42. At all times material to this action, the Defendant Curtis M. Jeffries acted under the color of state law.

43. At all times relevant to this action and in performance of the conduct identified in this Complaint, the Defendant Jeffries actively and personally violated Ann's constitutional rights.

44. Defendant Jeffries subjected Ann to the deprivation of her rights protected by the Fourth Amendment of the United States Constitution.

45. Defendant Jeffries used unnecessary and excessive force against Ann without justification.

46. Defendant Jeffries' identified actions manifested malicious, reckless, and callous indifference to Ann's clearly established constitutional rights of which reasonable police officers were then aware.

47. Defendant Jeffries' actions, as alleged within this Complaint, were the proximate cause of the damages sustained by Plaintiff.

## SECOND CAUSE OF ACTION

*42 U.S.C. § 1983 Deprivation of Constitutional Rights – Defendant Estes*

48. The Plaintiff Ann W. Gren incorporates by reference each allegation of fact within paragraphs 1-47 of this Complaint.

49. At all times material to this action, the Defendant Ryan A. Estes acted under the color of state law.

50. At all times relevant to this action and in performance of the conduct identified in this Complaint, the Defendant Estes actively and personally violated Ann's constitutional rights.

51. Defendant Estes subjected Ann to the deprivation of her rights protected by the Fourth Amendment of the United States Constitution.

52. Defendant Estes used unnecessary and excessive force against Ann without justification.

53. Defendant Estes' identified actions manifested malicious, reckless, and callous indifference to Ann's clearly established constitutional rights of which reasonable police officers were then aware.

54. Defendant Estes' actions, as alleged within this Complaint, were the proximate cause of the damages sustained by Plaintiff.

## **PRAYER FOR RELIEF**

WHERFORE the Plaintiff Ann W. Gren prays for judgment against the Defendants Ryan A. Estes, an individual, and Curtis M. Jeffries, an individual, as follows:

(a) economic and non-economic damages as provided under applicable law and deemed appropriate by a jury;

(b) attorney fees and litigation expenses incurred by Plaintiff pursuant to 42 U.S.C. § 1988, and as provided under applicable law;

(c) punitive damages against Defendants Estes and Jeffries as provided under applicable law and to the extent deemed appropriate by a jury;

(d) costs as provided under applicable law;

(e) pre-judgment and post-judgment interest as provided under applicable law; and,

(f) other declaratory, injunctive, or equitable relief as deemed appropriate.


## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action for which a jury is permitted.

DATED:  This 4th day of April, 2023.

/s/ Philip C. Patterson
Attorney for Plaintiff
Ann W. Gren